# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LUCIE M. THOMPSON,** | ) | **CASE NO.4:19CV2706** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ANIMAL WELFARE LEAGUE OF** | ) | **OPINION AND ORDER** |
| **TRUMBULL COUNTY, INC., ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motion for Judgment on the Pleadings of Defendants Animal Welfare League of Trumbull County, Inc. and Harold Firster.   (ECF# 22).  For the following reasons, the Court denies Defendants' Motion.

According to her First Amended Complaint, Plaintiff Lucie M. Thompson ("Thompson") is a Trumbull County resident and owner of a dog named Korn, who was seized by Defendants in 2017.   Thompson alleges Defendants Animal Welfare League of Trumbull County, Inc. ("AWL") and Harold Firster ("Firster"), an employee of AWL, along with several unnamed Doe employees of AWL, violated her Due Process rights when they took her dog without a hearing.

Thompson alleges that on November 15, 2017, Defendants entered her property.  That

same day, Firster filed with the Trumbull County Central District Court an Affidavit for Search Warrant but did not sign it until November 16, 2017, the day after the first search had already occurred.   The November 15, 2017 Search Warrant sought authorization to enter "7119 Warren-Sharon Road in the Township of Brookfield, Ohio 44403" and "diligently search the premises for any animals which are kept on the premises in order to establish whether any abuse or inability to properly house and care for the aforementioned."  This search warrant did not authorize Defendants to seize any property found therein.

On November 17, 2017, a second Search Warrant Affidavit was sworn to and subscribed to Trumbull County Judge Campbell by Firster.  This second Affidavit was identical to the first Affidavit, except it contained an Addendum describing the search that had occurred on November 15, 2017, and requesting that pursuant to the search, animals be removed from the premises.   These animals were described as horses, a pig, a dog, chickens and ducks.  The second Affidavit was not filed with the Trumbull County Court.

On November 17 and November 20, Defendants searched Thompson's residence and seized the animals, including her dog Korn.  On December 8, 2017, Firster filed criminal charges against Thompson for animal cruelty in violation of Ohio Revised Code Section 959.13.

After a trial, Thompson was found guilty of animal cruelty and her animals were forfeited to an animal sanctuary, except Korn, who was forfeited to AWL.  Thompson appealed her conviction but the conviction was upheld by the Ohio Eleventh District Court of Appeals.  At no time during these proceedings was Thompson provided a probable cause hearing as required by O.R.C. § 959.132.

2

Thompson alleges claims for violation of her Fourteenth Amendment Due Process rights against Firster and the Doe Defendants and a *Monell* Claim against Defendants for Due Process violations by AWL employees and agents due to unconstitutional policies and practices, deliberate indifference and failure to investigate.

**Defendants' Motion**

According to Defendants, AWL is a humane society authorized by the State of Ohio to investigate and enforce Ohio's animal cruelty laws.  Firster is an agent for the AWL. Although Thomspon's First Amended Complaint alleges deficiencies in the search warrant affidavits, her claims are unrelated to these alleged deficiencies.   Neither does Thompson's First Amended Complaint challenge her conviction or the constitutionality of O.R.C. § 959.132.   Instead, her claims are limited solely to the denial of her O.R.C. § 959.132 authorized probable cause hearing.

Defendants argue that Count I of Thompson's First Amended Complaint, alleging a Due Process violation of the Fourteenth Amendment to the U.S. Constitution for failure to provide a probable cause hearing, must be dismissed as it is barred by res judicata and collateral estoppel.

According to Defendants, Thompson could have argued, and in fact did argue, lack of due process in her criminal proceedings.  In her appeal, Thompson specifically asserted that "the court abused its discretion by allowing her dog to be seized without conducting a probable cause hearing and, thus her due process rights were violated."

The Court of Appeals rejected Thompson's argument, finding she had the opportunity to be heard on the issue prior to forfeiture of her animals and the trial court acted within its

3

authority to remove the animals upon Thompson's conviction for animal cruelty.  Because
Thompson had the opportunity to litigate this issue, did litigate it and it was rejected by a
court of competent jurisdiction, Defendants contend she is barred from relitigating the issue.

Furthermore, Defendants contend that the Sixth Circuit Court of Appeals has already
determined that failure to provide a hearing under O.R.C. § 959.132 is not a violation of a
person's Due Process rights so long as the person has a meaningful opportunity to be heard at
meaningful time.  Because Thompson had the opportunity to challenge the seizure of Korn at
her criminal trial and, in fact, did challenge the seizure, she was provided adequate Due
Process.

Finally, Defendants allege that Thompson's First Amended Complaint fails to offer
any facts in support of her *Monell* claim but instead only offers vague assertions that fail to
support her claim as required by applicable federal pleading standards.  Also, because there
was no constitutional violation, Thompson's *Monell* claim must fail as a matter of law.

**<u>Thompson's Response</u>**

According to Thompson, she did not and could not litigate her Fourteenth Amendment
claim in the state criminal proceedings and the state courts lacked the authority to grant her all
the forms of relief she now seeks.

In her appeal, Thompson's Third Assignment of Error read:

The Trial Court erred and abused its discretion because Lucie Thompson
was not given notice and an opportunity to be heard on the State deprivation of
her companion animal, and therefore her due process rights were violated, and
the State unreasonably seized her property.

*State v. Thompson,* 11th Dist. Trumbull No. 2018-T-0081,2019-Ohio-4835,¶18.

According to Thompson, the appellate court never made a finding that her Due

4

Process rights were satisfied, instead, it determined it could not give her the relief she requested which was return of her dog and reversal of her conviction. The Court of Appeals expressly stated that issues relating to due process in criminal cases can constitute harmless error when due process violations do not affect the outcome of the case. Thus, the appellate court did not make a due process determination. Therefore, res judicata does not bar Thompson from raising the issue here. Moreover, the state appellate court could not grant Thompson the monetary relief she now seeks but instead, could only reverse her conviction.

Thompson also contends the Sixth Circuit decision in *Cooks v. Takacs*, the case relied on by Defendants, does not foreclose her Due Process claims as the facts in that case differ from those herein. In *Takacs,* a dog was seized but returned to its owner within 18 days. Also, within two days of seizure, criminal charges were filed against Defendant. Here, Thompson was never afforded a probable cause hearing and has not seen her dog since November 2017. Also, no animal cruelty charge was filed against Thompson relating to Korn, but only for her non-companion animals. Finally, her trial was not held for nearly five months after Korn was seized. Because the Supreme Court requires the balancing of fact-specific factors in deciding Due Process claims, Thompson alleges Defendants' Motion for Judgment on the Pleadings must fail.

Thompson acknowledges that many of her claims regarding her private interest in the hearing itself cannot stand in light of *Takacs,* which held there is no protected property interest in the hearing itself and asks the Court to allow her to amend.

## LAW AND ANALYSIS

### Standard of Review

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almendares v. Palmer*, 284 F.Supp. 2d 799, 802 (N.D. Ohio 2003).  Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether  "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ*., 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974 (2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable."  *Id*.  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is granted when ***no material issue of fact*** exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added).  A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c).   "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

## Res Judicata and Collateral Estoppel

Under Ohio law, the doctrine of res judicata dictates that "a final judgment or decree

rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them."  *Johnson's Island, Inc. v. Bd. of Twp. Tr. of Danbury Twp.*, 431 N.E.2d 672, 674 (Ohio 1982).  See also *Clark v. Lender Processing Services, Inc.*, 949 F.Supp.2d 763, 773 (N.D. Ohio 2013).

In *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), the Ohio Supreme Court set out the standard for the claim-preclusive effect of res judicata as follows:  "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the same transaction or occurrence that was the subject matter of a previous action."  *Id*. at 382.  Four elements must be established to bar a claim under the doctrine of res judicata:

(1) there is a final, valid decision on the merits by a court of competent jurisdiction;

(2) the second action involves the same parties or their privies as the first;

(3) the second action raises claims that were or could have been litigated; and

(4) the second action arises out of the same transaction or occurrence as the first.

*See Portage Cty. Bd. of Commrs. v. City of Akron*, 109 Ohio St.3d 106, 123, citing *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

In *Grava*, 73 Ohio St.3d at 382, the Ohio Supreme Court noted that Comment b to Section 24 of the Restatement of Judgments defines "transaction" as a "common nucleus of operative facts."  This element cannot be avoided because a plaintiff presents grounds or theories of the case not presented in the first action or seeks a different remedy in the

subsequent action. *Grava*, 73 Ohio St.3d at 383; *Brown v. City of Dayton*, 89 Ohio St.3d 245 (2000).

"The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Ass'n, OEA/NEA v. State Employment Relations Bd.,* 81 Ohio St. 3d 392, 395, 692 N.E.2d 140, 144 (1998). The doctrine of collateral estoppel, or issue preclusion, "preclu[des] [ ] the relitigation in a second action of an issue * * * that ha[s] been actually and necessarily litigated and determined in a prior action." *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 195, 443 N.E.2d 978 (1983). In Ohio, courts apply the following elements when determining whether collateral estoppel applies: "(1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the issue; (3) the issue was admitted or actually tried and decided and was necessary to the final judgment; and (4) the issue was identical to the issue involved in the new action." *Mitchell v. International Flavors & Fragrances, Inc.*, 179 Ohio App. 3d 365, 371 (Ohio App. 1st Dist.2008). "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a 'full and fair opportunity to litigate that issue in the first action.'" *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813, (Ohio App. 8th Dist.1993). "When applying the

8

doctrine of collateral estoppel, federal courts must adopt the same doctrine of collateral estoppel as the state in which the earlier judgment was rendered." *Shroyer v. Frankel,* 197 F.3d 1170, 1178 (6th Cir. 1999).

Based on a review of the Ohio Court of Appeals decision in *State v. Thompson*, 11th Dist. Trumbull No. 2018-T-0081, 2019 WL 6311635 (Ohio App. 11 Dist. Nov. 25, 2019), the Court finds res judicata does not bar Thompson's Due Process claim. While Defendants are correct that Thompson raised the issue on appeal, the appellate court never directly determined the issue. Instead, the appellate court acknowledged that Thompson was never given a hearing but, regardless, she was not entitled to the relief sought -i.e. return of her dog and reversal of her conviction because failure to give her a hearing did not affect the outcome of her criminal trial. The appellate court held, "whether the dog was returned to her had no impact on the evidence presented at trial or her commission of an offense of Cruelty to Animals." *Id*. at ¶ 46. It further determined, "Thompson was ultimately able to refute any abuse through the trial and argue that the dog should be returned during sentencing." *Id.* The trial court found Thompson guilty of Cruelty to Animals and then, as part of its sentence, placed her on one year of probation and ordered that all of the animals seized be forfeited. The appellate court held that a trial court "has the authority to order the confiscation of any animal following a conviction for cruelty to animals." *Id* at ¶ 47. Lastly, it held, "although Thompson did not have an initial hearing regarding the seizure of her dog, the court ultimately removed it from her custody and was entitled to do so under the law." *Id.* Thus, the appellate court found that the State's failure to provide a post-deprivation hearing did not affect her criminal conviction and forfeiture of her dog because the trial court provided her

the opportunity to refute the abuse allegations at trial and acted within its authority upon

Thompson's conviction in ordering the dog's forfeiture. As a result, the appellate court

determined her Due Process claim was immaterial regarding her claims for return of her dog

and reversal of her conviction. The appellate court never decided her Due Process claim,

therefore, Thompson is free to pursue it in this Court.

**Authority of _Cook v. Takacs_**

Defendants further contend that the Sixth Circuit decision in _Cook v. Takacs,_ No. 19-

3755, 2020 WL 1888851 (6th Cir. April 16, 2020), forecloses Thompson's Due Process

claim. In _Cook_, the local animal control officer received a call that a dog was running loose.

She picked up the dog and took it to a kennel. After learning it belonged to the plaintiff, the

officer obtained information that the dog was mistreated. The officer kept the dog in the

kennel pending an investigation. The plaintiff was cited for two misdemeanor violations.

The citations were served on plaintiff two days later and a court date was set for eleven days

thereafter. At the court hearing, the charges were dropped and the dog was returned to the

plaintiff that same day.

Plaintiff sued the officer, her supervisor and the City of Middleburg Heights for

violation of his Due Process rights under the Fourteenth Amendment and for unlawful seizure

under the Fourth Amendment of the United States Constitution and under the Ohio

Constitution. He also asserted _Monell_ claims against the City of Middleburg Heights and

challenged the constitutionality of the Ohio statute he was cited for violating.

The district court granted summary judgment for the defendants and plaintiff appealed

only the judgment on his Due Process claim. In affirming summary judgment for defendants,

the Sixth Circuit held that plaintiff did not have a protected interest in the probable cause

hearing itself but did have a protected interest in his property -i.e.-his dog, and he was

deprived of that interest for eighteen days.  However, the Sixth Circuit noted that, "the

question regarding 'what process is due' is not answered by state law or local ordinances but

by constitutional benchmarks." *Id.* at *3 quoting *Chandler v. Village of Chagrin Falls*, 296 F.

App'x 463, 471 (6th Cir. 2008).

The Sixth Circuit then proceeded to analyze plaintiff's Due Process claim under the

*Mathews v. Eldridge*  424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) balancing test,

which examines the following:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute procedural
> safeguards; and finally, the Government's interest, including the function
> involved and the fiscal and administrative burdens that the additional or
> substitute procedural requirement would entail.

Id. at 335, 96 S.Ct. 893.

The Sixth Circuit ultimately concluded plaintiff was not deprived of his Due Process

rights.

Unlike the plaintiff in *Cook* who was deprived of his dog for a short period of time

before it was returned, Thompson was deprived of her dog for over five months.

Furthermore, the *Cook* decision was determined on summary judgment based on evidence

presented by the parties.

Therefore, the Court must apply the *Mathews* balancing test to determine if Thompson

received adequate due process.  "To establish a procedural due process claim, a plaintiff must

show (1) the existence of a protected property interest at issue, (2) a deprivation of that

11

protected property interest, and (3) that he or she was not afforded adequate procedures."
*Paterek v. Village of Armada,* 801 F.3d 630, 649 (6th Cir. 2015).  "The fundamental
requirement of due process is the opportunity to be heard 'at a meaningful time and in a
meaningful manner.' " *Mathews*, 424 U.S. at 333, (quoting *Armstrong v. Manzo,* 380 U.S.
545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

     Here, Thompson has alleged and the Sixth Circuit has held she has a protected
property interest in her dog.  See *O'Neill v. Louisville/Jefferson Cty. Metro Gov't,* 662 F.3d
723, 733 (6th Cir. 2011).  ("[T]here can be no dispute that an animal owner has a substantial
interest in maintaining his rights in a seized animal.... Animal owners [ ] have a substantial
interest in their 'mere' pets.").

     Thompson has also alleged she was deprived of her dog during the duration of her trial
without a hearing.  Thus, the only dispute is whether she was afforded adequate procedures,
which Thompson alleges she was not.

     At the pleading stage, Thompson need only set forth a claim with sufficient facts to
make her claim plausible.  As she has alleged and Defendants do not deny she was not
provided a hearing as required under Ohio law, she has sufficiently alleged a Due Process
claim under the Fourteenth Amendment.  While the adequacy of the procedures she was
provided is still subject to the *Mathews* balancing test, that analysis is appropriately reserved
for summary judgment as the court did in *Cook*, because "the analysis is fact specific, as "due
process is flexible and calls for such procedural protections as the particular situation
demands."  *Qing Tian v. United States*, No. 1:15CV264, 2017 WL 2964910, at *5 (S.D. Ohio
July 12, 2017).

12

Therefore, in light of the above authority, the Court denies Defendants' Motion for Judgment on the Pleadings on Thompson's Due Process claim.

*Monell* **claim**

Defendants move to dismiss Thompson's *Monell* claim, alleging that she failed to plead sufficient facts but merely recites legal conclusions that are wholly insufficient to support a *Monell* plausible claim of liability against a municipality.

Thompson's First Amended Complaint at Count II alleges the following *Monell* claims against Defendants:

62.  ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 have a custom of tolerance and acquiescence of Constitutional violations.

63. Defendants ANIMAL WELFARE LEAGUE, FIRSTER and DOES 1-5's policies, practices, customs, and habits relating to seizure of companion animals and the failure to provide  R.C. 959.132 procedural protections were a moving force behind the Fourteenth Amendment violations committed upon THOMPSON.

64. ANIMAL WELFARE LEAGUE, FIRSTER and DOES 1-5's failed to institute adequate policies and procedures, in order to prevent the violation of due process.

65.  ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5acted unconstitutionally and were final policy makers.

66.  ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 failed to conduct meaningful and adequate investigations into the blatant disregard of the mandated  R.C. 959.132 statutory procedure.

67.  ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5's actions, that being failure to investigate constitutional deprivations, ratified the misconduct of FIRSTER and DOES 1-5.

68.  ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 made a deliberate choice to ignore the mandates of R.C. 959.132, and seize, impound, and dispose of THOMPSON's dog Korn, without providing notice and an opportunity to be heard on whether there was probable

cause to seize and impound.

69. ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 failed to institute adequate county policies and procedures, in order to prevent and eliminate the offending acts which violated THOMPSON's Constitutional rights.

70. ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 were deliberately indifferent to the rights of those whose companion animals have been seized, that being the right to the protections afforded by R.C. 959.132.

71. ANIMAL WELFARE LEAGUE, FIRSTER, and DOES 1-5 course of action, that being to not follow the mandates of R.C. 959.132, was the moving force behind, and the cause of, the Constitutional violations.

Thompson's *Monell* claims concern the customs and policies of Defendants, the failure to implement the same, failure to investigate and deliberate indifference. In order to adequately plead a claim for municipal liability under *Monell,* Plaintiffs must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363–64 (6th Cir. 1993). To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (citation omitted) ).

14

"*Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible.  Rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, on whether such inadequate training can justifiably be said to represent "city policy."  Moreover, the identified deficiency in the training program must be closely related to the ultimate injury."  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 379, 109 S. Ct. 1197, 1200, 103 L. Ed. 2d 412 (1989).

Although more factual elucidation would be preferable, the standard is that the Complaint must state a ***plausible*** claim for relief.  Here, Thompson has alleged the Defendants' policies with respect to the seizure of animals and denial of statutorily mandated hearings was the moving force behind the constitutional violation and that Defendants were deliberately indifferent to her rights.  Plaintiff's claims may go forward even if "actual proof of [the] facts is improbable" or "a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.  The Court finds that there are enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of Plaintiff's claims.  *Id*.

Therefore, for the foregoing reasons, the Court denies Defendants' Motion.

IT IS SO ORDERED.


Dated: 11/18/2020                    /s/Christopher A. Boyko
                                     CHRISTOPHER A. BOYKO
                                     Senior United States District Judge