UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUCIE M. THOMPSON, | ) | CASE NO. 4:19CV2706 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | SENIOR JUDGE |
| vs. | ) | CHRISTOPHER A. BOYKO |
| | ) | |
| ANIMAL WELFARE LEAGUE OF | ) | |
| TRUMBULL COUNTY, INC., et al., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

<u>CHRISTOPHER A. BOYKO, SR. J.</u>:

This matter comes before the Court on Plaintiff's and Defendants' Motions for Summary Judgment (Docs. 39, 40-1).  The Court grants summary judgment in favor of Defendants on both claims in this case.  Defendants did not deprive Plaintiff of her right to due process under the Fourteenth Amendment by failing to hold a deprivation hearing regarding Plaintiff's dog, Korn.  Plaintiff received notice of the animal cruelty criminal charge against her and had meaningful opportunities to be heard throughout her state criminal proceeding.  Because there was no violation of a constitutional right, Defendants are not liable under *Monell*.  There are no disputes of material fact and Defendants are entitled to summary judgment as a matter of law.

BACKGROUND

A.  The Initial Seizure

In November 2017, Defendant Animal Welfare League of Trumbull County, Inc. ("AWL") began receiving complaints about the animals in Plaintiff Lucie Thompson's care,

1

including two horses, a dog (Korn) and a "yard of chickens." *See* Doc. 47-1, Page ID 637-51. One of the AWL complaints alleged that Korn was tied outside, that he had a doghouse but no food or water. Doc. 47-1, PageID 642. Another mentioned "[two] horses and a dog," asking AWL to "help these poor animals in any way you can." *Id.* at 649.

Defendant Harold Firster, an AWL employee, issued Thompson a warning. *State v. Thompson*, No. 2018-T-0081, 2019 WL 6311635 at *1 (Ohio Ct. App. Nov. 25, 2019). Firster also attempted to visit Thompson's property to check the welfare of the animals but Thompson denied him permission to enter. Doc. 47-1, Page ID 635. In an Affidavit, Firster stated that "insufficient housing has been provided for any and all animals on the property" and a judge of the Central District Court issued a Search Warrant ("Search Warrant I"). *Id.* at 636, 666. Search Warrant I authorized AWL and Firster to enter Thompson's property at 7119 Warren Sharon Road and "diligently search for any animals" to investigate "any abuse or inability to properly house and care" for the animals. Doc. 47-1, PageID 666. A copy of Search Warrant I was presented to "the resident of 7119 Warren Sharon Rd." *Id*. at PageID 615.

Two days after the initial search, Firster obtained a second Search Warrant ("Search Warrant II"), which authorized the removal of "two adult horses, one pig, one dog and various chickens and ducks." Doc. 47-1, PageID 632-4. AWL took custody of Korn, while the remaining animals were sent to Happy Trails Farms Animal Sanctuary. *Thompson* at *1.

B. **Thompson's Criminal Proceeding**

About three weeks after Korn's seizure, Firster filed a criminal complaint against Thompson for one count of Cruelty to Animals under Ohio Revised Code § 959.13. Doc. 47-1, PageID 668. Thompson received written notice of the charge and appeared in court within a week to enter a plea of not guilty. *Id.* at PageID 493, 608, 610. At a bench trial in late May

2

2018, Firster testified that he observed Thompson's animals living "in an unsuitable environment" without food or water. *Thompson*, 2019 WL 6311635 at *1. Several employees of Happy Trails who assisted with the removal of the animals made similar observations. *Id.* at *2. Thompson's neighbors and her son said that they saw no mistreatment of the animals and saw Thompson taking good care of them. *Id*. The trial court judge found Thompson guilty. Doc. 47-1, PageID 493.

After trial, Thompson wrote a letter to her trial counsel requesting that he no longer represent her because he "failed to identify what specific animals had been supposedly abused." Doc. 47-1, PageID 596. Before sentencing, Thompson obtained new counsel, who filed a Sentencing Memorandum on her behalf saying, "[t]he undersigned did have occasion to speak to the prosecuting attorney regarding the State's sentencing recommendation. It is counsel's understanding that the State does not recommend incarceration but does seek probation, forfeiture, and restitution." *Id.* at Page ID 530. The last line of the Sentencing Memorandum reads, "Wherefore, Defendant requests that the Court deny the State's request for restitution to Happy Trails Animal Farm and Sanctuary." *Id.* at PageID 532 (internal quotations omitted) (capitalization altered).

In early August 2018, the court sentenced Thompson to one year of probation and ordered the forfeiture of Korn to AWL and the rest of the animals to Happy Trails. *Thompson,* 2019 WL 6311635 at *2. The court also ordered restitution, which Thompson objected to and an additional hearing on the restitution matter was held two months later.

3

### C. State Appellate Court Findings

Thompson, represented by different counsel than she appeared with at sentencing, appealed her conviction to the Ohio Eleventh District Court of Appeals, raising eight assignments of error; the most relevant to this Court were:

> [3.] The Trial Court erred and abused its discretion because Lucie Thompson was not given notice and an opportunity to be heard on the State deprivation of her companion animal, and therefore her due process rights were violated, and the State unreasonably seized her property.
>
> [4.] The Trial Court erred and abused its discretion when it violated Lucie Thompson's Fourteenth and Fourth Amendment rights by authorizing the seizure of animals pursuant to R.C. 959.13, when no authority exists to do so.
>
> [5.] The Trial Court erred and abused its discretion because the R.C. 959.13 Criminal Conviction is invalid as to the Dog Seized.

*Thompson* at *3. The appellate court dismissed the third ground for lack of merit, holding that "although Thompson did not have an initial hearing regarding the seizure of her dog, the court ultimately removed it from her custody and was entitled to do so under law." *Id.* at *6. The court found Thompson's fourth ground lacked merit. It held that the trial court "was ultimately proper" in finding Thompson be prohibited from owning the animals and there was no violation of her Fourteenth Amendment rights when Thompson's animals were seized because Thompson had the opportunity to be heard at trial. *Id.* The court determined that "even if the animals had been impermissibly seized, this would constitute harmless error" because it did not affect the outcome of Thompson's criminal conviction. *Id.* The court also found Thompson's fifth ground lacked merit. It held that Thompson's conviction was valid as it applied to Korn because "R.C. 959.13 does not specify whether 'animal' means only non-companion animals" and the evidence at trial was "sufficient to establish the offense." *Id.* at *7. Ultimately, the court dismissed all eight assignments of error for lack of merit and upheld Thompson's conviction and sentence. *Id.* at *9.

### D. The Amended Complaint

In her First Amended Complaint, Thompson brings two Fourteenth Amendment claims under 42 U.S.C. § 1983 against Defendants AWL and Firster, along with several unnamed Doe employees of AWL. First, Thompson alleges that Defendants denied her due process by failing to hold a deprivation hearing as mandated by O.R.C. § 959.132. Second, Thompson claims that Defendants are liable under *Monell v. Dep't of Soc. Servs.*, 426 U.S. 637 (1978) because the policies, practices and customs relating to the seizure of companion animals and failure to provide pre-deprivation hearings were the moving force behind the violation of Thompson's constitutional right.

### E. Motions for Summary Judgment

Both parties filed Motions for Summary Judgment, seeking judgment in their favor on both claims. Docs. 39, 40-1. Under the due process claim, Thompson argues that she did not receive notice of the charge against her relating to Korn. And she claims that Defendants denied her a meaningful opportunity to be heard by failing to hold the deprivation hearing required by O.R.C. § 959.132. Thompson's *Monell* claim is based on a series of cases preceding this action, where AWL failed to hold deprivation hearings for those whose animals were seized.

Defendants argue that Thompson had multiple meaningful opportunities to challenge the charges against her and the seizure of Korn. Additionally, Defendants argue that Firster is entitled to summary judgment under the doctrine of qualified immunity. In response to the *Monell* claim, Defendants assert that there is no underlying constitutional violation and Thompson has not presented credible evidence to establish her claim.

The parties' Summary Judgment Motions are fully briefed and ripe for review.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are dictated by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the party who bears the burden of proof at trial does not establish an essential element of their claim, summary judgment should be granted. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A court views "all evidence in the light most favorable to the nonmoving party." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016). When the moving party satisfies its burden of proof, the burden shifts to the nonmoving party, who must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

**ANALYSIS**

**A. Thompson's Procedural Due Process Claim**

"Constitutional benchmarks" are the metric of "what process is due" rather than "state law or local ordinances." *Chandler v. Village of Chagrin Falls*, 296 Fed.Appx. 463, 471 (6th Cir. 2008). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). But the fundamental requirements are "notice of the charges and a meaningful opportunity to contest the evidence." *Morrison v. Warren*, 375 F.3d 468, 473 (6th Cir. 2004).

To establish a procedural due process claim, a plaintiff must show: 1) the existence of a protected property interest at issue, 2) a deprivation of that protected property interest and 3) that the plaintiff was not afforded adequate procedures. *Paterek v. Village of Armanda*, 801 F.3d 630, 649 (6th Cir. 2015). In analyzing the adequacy of the procedures afforded, the court must balance: 1) the private interest that will be affected by the official action, 2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards and 3) the Government's interest and burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

    *i.*   *Thompson's protected property interest.*

Pet owners do not have a protected interest in a probable cause hearing under Ohio Revised Code § 959.132 but they do have a protected property interest in their dog.[1] *Cook v. Takacs*, 808 Fed.Appx. 373, 375-6 (6th Cir. 2020) (citing *O'Neill v. Louisville/Jefferson Cty. Metro Gov't*, 662 F.3d 723, 733 (6th Cir. 2011)).

In *Cook*, a City of Middleburg Heights Animal Control officer picked up a dog who was running at-large and took it to a kennel. The dog appeared skittish and the officer was instructed to keep the dog pending an investigation for animal cruelty. Three days later, the dog-owner, Cook, received a citation in the mail for animal cruelty. The prosecutor ended up dismissing Cook's charges and returning the dog. Cook filed a § 1983 lawsuit against the officer and the City of Middleburg Heights alleging the defendants deprived him of due process by seizing his

---

[1] The Sixth Circuit has also held that if a pet-owner's dog "w[as] seized as part of criminal proceedings, that property interest [is] protected by the Fourth (not the Fourteenth) Amendment." *King v. Montgomery County, Tenn.*, 797 Fed.Appx. 949, 956-7 (6th Cir. 2020) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005)). But because neither party disputes that Thompson has a protected interest in her dog, the Court does not need to address the issue directly at this time.

7

dog without holding a probable cause hearing as mandated by O.R.C. § 959.132. The district court granted summary judgment in favor the defendants, finding that no constitutional violation occurred. *Cook v. Takacs,* No. 1:18CV1982, 2019 WL 3252967 at *8 (N.D. Ohio July 19, 2019).

On appeal, the Sixth Circuit affirmed, holding that Cook did not have a protected interest in receiving the process set forth in § 959.132. The court found Cook's property interest at stake was in his dog and determined that "the temporary seizure and impoundment of Cook's dog did not violate due process" because "a pre-seizure hearing was not feasible," "Cook received notice of the seizure," and "his dog was returned to him." *Cook*, 808 Fed.Appx. at 376-7.

The parties do not dispute that Thompson has a protected property interest in her dog or that Thompson has been permanently deprived of Korn. Therefore, the only element of due process at issue is whether Thompson was afforded adequate procedure.

    ii.    *Thompson had notice of the charges against her.*

Thompson argues that she was never informed of any charges against her for committing animal cruelty towards Korn and was never charged with any crimes related to Korn. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., Doc. 54, PageID 814. Thompson relies on *O'Neill v. Louisville/Jefferson County Metro Government*, 662 F.3d 723 (6th Cir. 2011) to assert that when a clear-cut, statutory procedure for notification of a deprivation hearing is not followed, "any notice Defendants may claim Thompson received, is nevertheless constitutionally inadequate." *Id.* at 815.

The O'Neills claimed that officers of Louisville Metro Animal Services ("LMAS") violated their Fourteenth Amendment right to procedural due process when the officers entered

8

their home without a warrant and seized their dogs. The director of LMAS said that he had "created" an animal-control ordinance that gave him the authority to impound the dogs. He told the O'Neills that rather than fining or arresting them for their violation of the ordinance, they could pay $1,020.95 upfront and take their animals home. The O'Neills paid. They never received written notice of a violation in connection with the impoundment. The district court dismissed the O'Neills' claim. On appeal, the Sixth Circuit held that the O'Neills had adequately plead their claim for lack of procedural due process because they did not receive written notice and reversed the district court.

Thompson's case is distinct from *O'Neill* because Thompson received written notice of the charges against her at multiple junctures. First, a copy of Search Warrant I put her on notice that Defendants were investigating "any abuse or inability to properly house and care" for "***any animals***" which are kept on the premises." Doc. 47-1, PageID 666 (emphasis added). Second, after Defendants seized Korn, Thompson received written notice of the animal cruelty charge against her before she appeared in court to plead not guilty to that charge. *Id.* at PageID 610.

Thompson argues that like the plaintiffs in *O'Neill*, she was "never charged with committing any acts of cruelty upon her beloved dog Korn." Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc 47, PageID 476-7. The State charged Thompson with cruelty to animals under O.R.C. § 959.13, which states that no person shall "deprive ***[an animal]*** of necessary sustenance" or "confine ***an animal*** without supplying it during such confinement with a sufficient quantity of good wholesome food and water." Doc. 47-1, PageID 613 (emphasis added). A dog is an animal. Thompson's conviction under § 959.13 went towards the "many animals" seized from her property pursuant to Search Warrant II. *Thompson*, 2019 WL 6331635 at *7. Additionally, the appellate court concluded that Thompson's conviction was not strictly

9

limited to "only non-companion animals." *Id.* Thus, Thompson cannot reasonably argue that she did not have notice of the animal cruelty charge relating to Korn.

Thompson claims that prior to sentencing, she had "no notice that her dog was going to be forfeited." Pl.'s Mot. for Summ. J., Doc. 40-1, PageID 330. However, Thompson's counsel filed a Sentencing Memorandum on her behalf, acknowledging an "understanding that the State does not recommend incarceration but ***does seek*** probation, ***forfeiture***, and restitution." Doc. 47-1, PageID 530 (emphasis added). The only objection in the Sentencing Memorandum was to restitution.[2] *Id.* at PageID 532. Based on this evidence, no reasonable juror could find that Thompson had no notice that Korn, who was seized as part of the criminal proceedings, could be forfeited as part of the same criminal proceedings.

For these reasons, the *O'Neill* court's reasoning does not apply to Thompson's case. The Court finds that Thompson had notice of both the charge against her and the forfeiture relating to Korn.

### iii. *Thompson had a meaningful opportunity to be heard.*

Thompson argues that she had no meaningful opportunity to be heard because Defendants did not abide by the procedural mechanisms under O.R.C. § 959.132.[3] According to Thompson, the procedures afforded to her were inadequate under *Mathews*.[4] But Thompson

---

[2] Additionally, O.R.C. § 959.99 stipulates the penalties for offenses relating to domestic animals and states that "***the court may order the offender [of § 959.13] to forfeit the animal.***" Ohio Rev. Code Ann. § 959.99(D) (Westlaw through File 102 of 134th Gen. Assemb.) (emphasis added).

[3] The relevant text of the statute states that the court shall hold a probable cause hearing "not later than ten days after notice is provided ***or at the next available court date***." Ohio Rev. Code Ann. § 959.132(E)(1) (Westlaw through File 102 of 134th Gen. Assemb.) (emphasis added).

[4] In *Mathews*, the Supreme Court reiterated that it "consistently has held that ***some*** form of hearing is required before an individual is ***finally*** deprived of a property interest." *Mathews*, 424 U.S. 333 (emphasis added). Here, Thompson's form of a hearing was a bench trial, which took place before she was finally deprived of Korn at sentencing.

10

fails to demonstrate why the procedures she was afforded were insufficient[5] and therefore, in addition to the reasons below, the Court finds that Thompson received adequate process.

The first *Mathews* factor is the private interest that will be affected by the official action. *Id.* at 335. Thompson's challenge centers on the fact that "no seizure hearing was afforded to her at any time" regarding Korn. Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. 47, PageID 480. As discussed above, Thompson does not have a protected interest in a § 959.132 probable cause hearing. Thompson's protected interest here is in Korn.

The next *Mathews* factor is "the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. This Court wrote in minimizing the risk of erroneous deprivation, the procedural methods used strive to assure 1) fairness in the decision-making process and 2) that the individual affected has a participatory role in the process. *Trawick v. Kelly*, No. 4:12CV1714, 2012 WL 5400007 at *2 (N.D. Ohio Nov. 5, 2012) (citing *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996)).

In Thompson's case, even though a deprivation hearing was not held, the risk of erroneous deprivation of Korn through the procedures used was low. Thompson had several opportunities to contest the seizure and forfeiture of Korn. She was present when Defendants first seized Korn. She had notice from Search Warrant I that Korn was part of an animal cruelty investigation. She made an initial appearance where she plead not guilty and she went to trial. As evidenced by the Sentencing Memorandum, Thompson had notice that the State intended to

---

[5] In *King v. Montgomery County, Tenn.*, 797 Fed.Appx. 949, the Sixth Circuit found no constitutional violation of a pet owner's right to due process when the owner failed to prove why the procedures underlying the impoundment of her dogs were insufficient under the Fourteenth Amendment. *King* at 958.

ask for forfeiture along with probation and restitution.  And when the court ordered the forfeiture of Korn, Thompson did not object.  In fact, Thompson "agrees with Defendants that she had opportunities to challenge the R.C. 959.13 charges."  Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. 47, PageID 480.

And as held by the state appellate court in Thompson's appeal, § 959.13 is not a "non-companion animal" statute.  Thompson's conviction under § 959.13 regarding Korn was valid.  She had a fair trial, sentencing and appeal.  Thompson participated in every stage of her criminal proceedings and the decision-making procedures were not unfair.  Thus, the Court finds the risk of erroneous deprivation in this case was, at best, low.

The last *Mathews* factor is the Government's interest, including the burdens that additional procedural requirements would entail.  In *Cooks,* the Sixth Circuit held that "[t]here is a strong governmental interest" in the ability "to seize and impound animals that may be in imminent danger of harm."  *Cooks*, 808 Fed.Appx at 376 (citing *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 487 (6th Cir. 2014)).  Here, Defendants seized Korn pursuant to a valid search warrant signed by a Trumbull County judge.  The State charged Thompson with animal cruelty and Thompson was convicted of animal cruelty.  Thompson argues that she was not charged with animal cruelty as it relates to Korn but that argument has no merit based on the appellate court's finding that a conviction under § 959.13 did not preclude Korn.

Although Thompson did not have a separate deprivation hearing under §959.132, she had notice and had a meaningful opportunity to be heard.  Thus, the Court finds there was no violation of Thompson's constitutional right to due process and grants Defendants summary judgment on the first claim of the First Amended Complaint.

    iv.    *Firster's qualified immunity argument.*

There was no due process violation so the Court need not address Firster's qualified immunity argument. *See Chappell v. City of Cleveland*, 585 F.3d 901, 916 (6th Cir. 2009).

### B. Thompson's *Monell* Claim

Because there was no constitutional violation, there is no basis to find AWL liable under *Monell*. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Additionally, the evidence Thompson provided is insufficient to establish a *Monell* claim.

### CONCLUSION

The Court grants Defendants' Motion for Summary Judgment and denies Thompson's Motion for Summary Judgment. Thompson failed to establish a procedural due process claim under the Fourteenth Amendment and did not provide evidence that raises issues of material fact to be determined by a jury. She had notice of Korn's seizure and the criminal charge for animal cruelty against her. Given the several meaningful opportunities Thompson had to be heard during her state criminal proceedings, the failure to hold a deprivation hearing under § 959.132 does not rise to the level of a constitutional violation of procedural due process. And with no constitutional violation, there is no basis for Thompson's *Monell* claim. Thus, the Court grants summary judgment in favor of Defendants on both claims.

**IT IS SO ORDERED.**

                                                          s/ Christopher A. Boyko
                                                          **CHRISTOPHER A. BOYKO**
                                                          **Senior United States District Judge**

**Dated: July 6, 2022**